UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CHANTAL SAUCIER, ET AL. | CIVIL ACTION NO. 6:20-cv-01197 |
| VERSUS | JUDGE SUMMERHAYS |
| CHUCKWUDI UCHENDU, M.D., ET AL. | MAGISTRATE JUDGE HANNA |

## **REPORT AND RECOMMENDATION**

Pending before this Court is the motion to dismiss, under Fed. R. Civ. P. 12(b)(6), which was filed by the defendant, Myriam Hutchinson, M.D., individually and in her official capacity as Vermilion Parish Coroner. (Rec. Doc. 22). This Court converted the motion to dismiss to a motion for summary judgment solely on the issue of whether Dr. Hutchinson was a qualified health care provider at relevant times (Rec. Doc. 45 at 8) but maintained it as a motion to dismiss with regard to all other issues addressed in the motion. The parties were afforded an opportunity to supplement their briefing, and they did so. (Rec. Docs. 46, 49). Both the motion to dismiss and the motion for summary judgment are opposed. The motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motions should be granted, and the claim against Dr. Hutchinson should be dismissed as premature.

## Background

The plaintiffs' daughter K.D. was thirteen years old in September 2019. Based on a report that K.D. was cutting herself, Vermilion Parish Sheriff's deputies allegedly took K.D. from her home to Abbeville General Hospital in the wee hours of September 17, without her parents' consent and over their objections. At the hospital, Dr. Chuckwudi Uchendu allegedly told the plaintiffs that K.D. had attempted suicide and would be involuntarily committed to a mental institution. He signed a Physician's Emergency Certificate ("PEC") directing that K.D. be involuntarily committed for fifteen days. The plaintiffs alleged that Dr. Uchendu violated state law by failing to examine K.D. before issuing the PEC. They further alleged that he set forth false information in the PEC.

Later that morning, Vermilion Parish coroner Dr. Myriam Hutchinson allegedly signed a Coroner's Emergency Certificate ("CEC"), directing that K.D. be involuntarily committed. The plaintiffs alleged that Dr. Hutchinson violated Louisiana law by failing to examine K.D. before signing the CEC, falsely stated in the CEC that K.D. had attempted suicide and was then currently suicidal, and falsely stated in the CEC that K.D. was seriously mentally ill, dangerous to herself, and gravely disabled.

The next day, K.D. was allegedly transferred from Abbeville General Hospital and driven by a Vermilion Parish sheriff's deputy to Cypress Grove Hospital in

Bastrop, Louisiana. The plaintiffs alleged that, on September 20, K.D. was sexually assaulted by another patient at Cypress Grove. K.D. was allegedly released from Cypress Grove three days after that.

The plaintiffs sued Dr. Hutchinson and others, asserting claims under 42 U.S.C. § 1983 and Louisiana state law. They asserted claims against Dr. Hutchinson, in her individual and official capacities, for false arrest, false imprisonment, unreasonable search and seizure, fraud, and intentional infliction of emotional distress. They also seek to recover punitive damages from Dr. Hutchinson, alleging that, in her individual capacity, she acted maliciously or with reckless indifference to the plaintiffs' rights.

## The Contentions of the Parties

Dr. Hutchinson responded to the complaint with the instant motion to dismiss, arguing that the claims against her were premature because the plaintiffs failed to exhaust their administrative remedies by convening a medical review panel before filing suit, as required by Louisiana law. The plaintiffs argued that Dr. Hutchinson is not a qualified healthcare provider subject to the Louisiana Medical Malpractice Act and therefore argued that this lawsuit could proceed without the necessity of having the claim against her submitted to a medical review panel.

## Law and Analysis

### I. The Motion for Summary Judgment

#### A. The Applicable Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3] If the moving party carries its initial burden, the burden shifts to the nonmoving party to

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

demonstrate the existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

### B. Dr. Hutchinson was a Qualified Health Care Provider at Material Times

The plaintiffs argued that Dr. Hutchinson was not subject to the Louisiana Medical Malpractice Act ("MMA"), La. R.S. 40:1231.1, *et seq.*, because she was not a qualified health care provider when she signed the CEC directing that K.D. be involuntarily committed. The term "health care provider" is defined in the MMA to include physicians licensed to practice in Louisiana.[8] A health care provider is "qualified" under the MMA only if she meets the statutory definition of the term

---

[4] *Washburn v. Harvey*, 504 F.3d at 508.

[5] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8] La. R.S. 40:1231.1(A)(10).

5

"health care provider," has filed proof of financial responsibility with the Patient's Compensation Fund, and has paid a required surcharge.[9] The plaintiffs did not suggest that Dr. Hutchinson does not meet the statutory definition of the term "health care provider," but they argued that she had not submitted a certificate establishing her enrollment in the Patient's Compensation Fund.

In response to the conversion of the motion to dismiss to a motion for summary judgment on this issue, Dr. Hutchinson filed a certificate into the suit record, showing that she was enrolled in the Patient's Compensation Fund at the time she issued the CEC and at the time this suit was filed. (Rec. Doc. 46-1 at 1). This Court therefore finds that Dr. Hutchinson was a qualified health care provider at material times and recommends that summary judgment should be granted in her favor on that issue.

## II. The Motion to Dismiss

### A. The Standard for Evaluating a Rule 12(b)(6) Motion

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether the complaint states a legally cognizable claim. Rule 12(b)(6) motions are viewed with disfavor and rarely granted.[10] When considering such a motion, the district court must limit

---

[9] La. R.S. 40:1231.2(A). See also *Luther v. IOM Co. LLC*, 2013-0353 (La. 10/15/13), 130 So.3d 817, 824.

[10] *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

itself to the contents of the pleadings, including any attachments thereto,[11] accept all well-pleaded facts as true, and view the facts in a light most favorable to the plaintiff.[12] Conclusory allegations, unwarranted deductions of fact, and legal conclusions couched as factual allegations are not accepted as true.[13]

To survive a Rule 12(b)(6) motion, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[14] A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[16] Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter

---

[11] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[13] *Collins v. Morgan Stanley*, 224 F.3d at 498; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[14] *Hammer v. Equifax Information Services, L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (citing *Bell Atlantic v. Twombly*, 550 U.S. at 570).

[15] *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678).

[16] *Bell Atlantic v. Twombly*, 550 U.S. at 570.

7

(taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[17]

### B. The Claim Against Dr. Hutchinson Sounds in Malpractice

Under Louisiana law, medical malpractice claims are governed by either the MMA[18] or the Medical Liability for State Services Act ("MLSSA").[19] As the Vermilion Parish coroner, Dr. Hutchinson is not a state health care provider under the MLSSA.[20] Therefore, any medical malpractice claim against Dr. Hutchinson is governed by the MMA, which requires that medical malpractice actions against qualified healthcare providers must be brought before a medical review panel before being asserted in a court of law.[21] Claims asserted in federal court as well as those asserted in Louisiana state court are subject to this requirement.[22] Thus, a medical malpractice claim is premature and must be dismissed for failure to exhaust

---

[17] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. at 556).

[18] La. R.S. 40:1231.1, *et seq.*

[19] La. R.S. 40:1237.1, *et seq.*

[20] La. R.S. 40:1237.1(A)(9)(b). See, also, *Vanderhoff v. Beary*, 853 So.2d 752, 755, 2003-0912 (La. App. 4 Cir. 08/20/03), 853 So.2d 752, 755, *writ denied*, 2003-2895 (La. 01/09/04), 862 So.2d 987 ("a parish is a political subdivision of the state and political subdivisions are excluded from the scope of the MLSSA.").

[21] La. R.S. 40:1231.8(A)(1)(a).

[22] The Fifth Circuit has found that the Louisiana Medical Malpractice Act is constitutional and applies to state law medical malpractice claims filed in federal court. See *Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d 146 (5th Cir. 1981).

administrative remedies when filed without first going through the medical review panel process.

The plaintiffs contend that the claim asserted against Dr. Hutchinson in this lawsuit is not a medical malpractice claim. The MMA defines the term "malpractice" as "any unintentional tort or any breach of contract based on health care or professional services rendered."[23] The plaintiffs attempted to evade the necessity for a medical review panel by characterizing their claims against Dr. Hutchinson as intentional and by contending that the claims arise under Section 1983. Valid Section 1983 claims are premised upon the violation of constitutional civil rights involving intentional wrongdoing on the part of a state official; therefore, the requirement for a medical review panel usually does not apply to Section 1983 claims.[24] Similarly, false imprisonment may sound in general tort law rather than medical malpractice[25] and is often referred to as an intentional tort.[26] But Louisiana

---

[23] La. R.S. 40:1231.1(A)(13).

[24] *Zavala v. City of Baton Rouge/Parish of East Baton Rouge*, No. 17-656-JWD-EWD, 2018 WL 4517461, at *14 (M.D. La. Sept. 20, 2018) (citing *Bailey v. E.B.R. Parish Prison*, No. 12-224-JJB, 2015 WL 545706, at *3 (M.D. La. Feb. 9, 2015)).

[25] See *Wilson v. Ochsner Clinic Foundation*, No. 19-12314, 2019 WL 5693109, at *3 (E.D. La. Nov. 4, 2019).

[26] *Craig v. Our Lady of the Lake Regional Medical Center*, No. 15-00814-BAJ-RLB, 2017 WL 1113326, at *3 (M.D. La. Mar. 23, 2017). But cf. *Prisk v. Palazzo*, 95-1475 (La. App. 4 Cir. 01/19/96), 668 So.2d 415, at 417, *writs denied*, 96-0437 (La. 04/08/96), 671 So.2d 335 (explaining that the civil cause of action for false imprisonment requires proof of restraint without color of legal authority but does not require proof that the confinement was intentional).

9

courts have determined that the precise type of claim asserted against Dr. Hutchinson in this case is a medical malpractice claim.

In *Prisk v. Palazzo*,[27] the plaintiff sued a doctor and a hospital, alleging that they falsely imprisoned her for several days. The plaintiff argued that she had not stated a medical malpractice claim because false imprisonment is an intentional tort. The court held:

> Louisiana's Mental Health Law contemplates confinement in a treatment facility as the initial step in the examination and treatment of persons suffering from substance abuse or mental illness. Unlike other illnesses, the Mental Health Law imposes special duties on physicians and hospitals before confining a patient for treatment. Those statutory duties are the standards which physicians and hospitals must adhere to in the initial stages of treatment. We hold that any breach of that standard of care is medical malpractice as defined in the Act.[28]

Consequently, the plaintiff's claim that she was falsely imprisoned sounded in medical malpractice, and the suit was dismissed as premature for failure to exhaust administrative remedies by convening a medical review panel before filing suit.

The same result was reached in *Craig v. Our Lady of the Lake*.[29] There, the plaintiff alleged that she was involuntarily hospitalized in violation of various state

---

[27] *Prisk v. Palazzo*, 95-1475 (La. App. 4 Cir. 01/19/96), 668 So.2d 415, *writs denied*, 96-0437 (La. 04/08/96), 671 So.2d 335.

[28] *Prisk v. Palazzo*, 668 So.2d at 418.

[29] *Craig v. Our Lady of the Lake Regional Medical Center*, No. 15-00814-BAJ-RLB, 2017 WL 1113326 (M.D. La. Mar. 23, 2017).

and federal constitutional provisions and statutes. Citing *Prisk*, the court held that the plaintiff's claims of false imprisonment and the failure to train and supervise its employees to respect the constitutional and statutory rights of patients amounted to malpractice, as that term has been construed by Louisiana courts, and had to be submitted to a medical review panel before being asserted in court. In so ruling, the court said:

> When a person is admitted involuntarily to a treatment facility pursuant to an emergency certificate, Louisiana law – often referred to as the "Mental Health Law" – requires physicians and medical facilities to undertake certain procedural measures both before and after a person is committed to the treatment facility. The special requirements that are imposed on physicians and medical facilities by the Mental Health Law "are the standards [that] physicians and hospitals must adhere to in the initial stages of treatment. . . . [A]ny breach of that standard of care is medical malpractice as defined in [Louisiana Revised Statutes section 40:1231.1(A)(13)]," even if the tort alleged by a plaintiff customarily is considered an intentional tort, such as false imprisonment.[30]

In *White v. City of New Orleans*,[31] the plaintiff claimed that she was unlawfully arrested; transported to UMCNO, where her blood was drawn without her consent; and then transported by ambulance to a mental hospital where she was subjected to medical testing and treatment against her will. Her medical records showed that she was taken to UMCNO's emergency room on an order for protective

---

[30] *Craig v. Our Lady of the Lake Regional Medical Center*, 2017 WL 1113326 at *3 (citations omitted).

[31] *White v. City of New Orleans*, No. 19-11911-WBV-KWR, 2020 WL 2844845 (E.D. La. May 29, 2020) (currently on appeal to the Fifth Circuit Court of Appeals).

custody and that the emergency certificate was kept in place after she was evaluated and found to have either a personality disorder, schizophrenia, or dementia. UMCNO argued that the plaintiff's claim against it was premature for failure to present the claim to a medical review panel. The court analyzed the factors prescribed by the Louisiana Supreme Court[32] and found that the allegations set forth in her complaint fell within the statutory definition of malpractice, as interpreted by Louisiana courts.[33] Because she had not initiated a medical review panel before filing suit, the court dismissed her claims as premature.[34]

In this case, as in the three cases cited above, the plaintiffs alleged that Dr. Hutchinson failed to comply with the procedural requirements for involuntarily admitting a psychiatric patient to a mental health facility. More particularly, the plaintiffs alleged that Dr. Hutchinson failed to examine K.D. before issuing the CEC (as required by La. R.S. 28:53) and included false information in the CEC. As noted above, the Louisiana Supreme Court has provided guidance by recognizing six factors relevant to determining whether particular conduct constitutes malpractice. The factors are:

---

[32] The factors were originally articulated in *Coleman v. Deno*, 2001-1517 (La. 01/25/02), 813 So.2d 303, 315-16.

[33] *White v. City of New Orleans*, 2020 WL 2844845 at *6.

[34] *White v. City of New Orleans*, 2020 WL 2844845 at *7.

[1] whether the particular wrong is treatment related or caused by a dereliction of professional skill;

[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

[3] whether the pertinent act or omission involved assessment of the patient's condition;

[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

[5] whether the injury would have occurred if the patient had not sought treatment; and

[6] whether the tort alleged was intentional.[35]

When the facts of this case are compared against these factors, this Court concludes that Dr. Hutchinson's alleged actions fall within the parameters of medical malpractice. First, whether a patient should be admitted to a hospital for mental health treatment is treatment-related and requires the exercise of professional skill since Louisiana law "contemplates confinement in a treatment facility as the initial step in the examination and treatment of persons suffering from substance abuse or mental illness."[36] This factor supports the characterization of the plaintiffs' claim against Dr. Hutchinson as medical malpractice.

---

[35] *Coleman v. Deno*, 813 So.2d at 315-16.

[36] *Prisk v. Palazzo*, 668 So.2d at 418.

Second, expert medical evidence will be necessary to determine whether Dr. Hutchinson's decision to have K.D. involuntarily committed breached the appropriate standard of care. Louisiana law "imposes special duties on physicians and hospitals before confining a patient for treatment. Those statutory duties are the standards which physicians and hospitals must adhere to in the initial stages of treatment. . . [and] any breach of that standard of care is medical malpractice. . . ."[37] Since the plaintiffs alleged that Dr. Hutchinson breached the applicable statutory duties, they consequently alleged that she breached the relevant standard of care and will likely be required to present expert evidence or testimony to support that contention at trial.[38] Therefore, this factor weighs in favor of characterizing the plaintiffs' claim against Dr. Hutchinson as medical malpractice.

Third, deciding whether to hospitalize K.D. certainly involved an assessment of her condition; indeed, the plaintiffs specifically alleged that Dr. Hutchinson failed to examine K.D. and therefore improperly evaluated her condition. Therefore, this factor supports a conclusion that Dr. Hutchinson's actions and omissions constituted medical malpractice.

---

[37] *Prisk v. Palazzo*, 668 So.2d at 418.

[38] *Samaha v. Rau*, 2007-1726 (La. 02/26/08), 977 So.2d 880, 884 ("Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached. . . .").

14

Fourth, although there is no allegation that K.D. or her parents sought treatment from Dr. Hutchinson, it is arguable that Dr. Hutchinson was acting within the context of a physician-patient relationship with K.D. when she made the decision to commit her. This factor consequently weighs in favor of classifying the plaintiffs' claim against Dr. Hutchinson as medical malpractice.

The fifth factor supports a conclusion that the plaintiffs' claim against Dr. Hutchinson sounds in medical malpractice because the plaintiffs argued that K.D. would not have been injured if Dr. Hutchinson had not been involved in her care. In a similar situation when the services of the health care provider were not sought by the plaintiff, however, this factor was found to be "not particularly relevant." [39]

Finally, the plaintiffs alleged that Dr. Hutchinson acted intentionally, implicitly arguing that the claims they asserted do not fall within the scope of medical malpractice. While this would seem to weigh against finding that the plaintiffs' claims against Dr. Hutchinson are medical malpractice claims, the plaintiffs' subjective characterization of Dr. Hutchinson's actions is not binding. When the requirements imposed on physicians by Louisiana's mental health law are breached, medical malpractice has occurred "even if the tort alleged by a plaintiff

---

[39] In a similar situation, the court found that this factor "is not particularly relevant." *Wilson v. Ochsner Clinic Foundation*, No. 19-12314, 2019 WL 5693109, at *4.

customarily is considered an intentional tort, such as false imprisonment."[40] Indeed, a "review of Louisiana jurisprudence. . . reveals courts routinely determine that delictual conduct plead as a traditional intentional tort can still sound in medical malpractice."[41]

In summary, this Court's analysis of the pertinent factors overwhelmingly weighs in favor of finding that the plaintiffs' allegations against Dr. Hutchinson describe conduct that, if proven, would constitute medical malpractice.

As the defendant in this lawsuit, Dr. Hutchinson has the burden of proving that the suit is premature.[42] This requires her to show that she is a qualified health care provider[43] under the MMA, and that the allegations against her sound in medical malpractice.[44] Dr. Hutchinson established that she was a qualified health care provider at the time of the events described in the plaintiffs' complaint and when the suit was filed, and the conduct alleged in the plaintiffs' complaint, when compared

---

[40] *Craig v. Our Lady of the Lake Regional Medical Center*, 2017 WL 1113326, at *3.

[41] *Wilson v. Ochsner Clinic Foundation*, No. 19-12314, 2019 WL 5693109, at *4.

[42] *Williamson v. Hospital Service Dist. No. 1 of Jefferson*, 2004-0451 (La. 12/01/04) 888 So.2d 782, 785.

[43] See, e.g., *Armand v. Lady of the Sea General Hosp.*, 80 So.3d 1222, 1226, 2011-1083 (La. App. 1 Cir. 12/21/11), 80 So.3d 1222, 1226; *Remet v. Martin*, 97-0895 (La. App. 4 Cir. 12/10/97), 705 So.2d 1132, 1134.

[44] *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 2007-0008 (La. 09/05/07), 966 So.2d 519, 523; *Williamson v. Hospital Service Dist. No. 1 of Jefferson*, 888 So.2d at 785.

against the relevant factors identified by the Louisiana Supreme Court as constituting medical malpractice, plausibly falls within the scope of medical malpractice. Accordingly, this Court finds that the plaintiffs' claim against Dr. Hutchinson is premature because the plaintiffs failed to initiate a medical review panel proceeding before filing this lawsuit.

### III. <u>Alternative Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

To the extent that Dr. Hutchinson may have asserted an alternative motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction, which was not clearly articulated in her motion or supporting memorandum, consideration of that motion is pretermitted, this Court having found that the plaintiffs' complaint fails to state a plausible claim against Dr. Hutchinson.

### <u>Conclusion</u>

For the foregoing reasons, this Court finds that (1) Dr. Hutchinson was a qualified health care provider at relevant times, (2) the plaintiffs' claim against Dr. Hutchinson is a medical malpractice claim, and (3) the plaintiff's claim against Dr. Hutchinson is premature because it was not submitted to a medical review panel before this lawsuit was filed. Accordingly,

IT IS RECOMMENDED that summary judgment should be entered in favor of Dr. Hutchinson on the issue of her status as a qualified health care provider at material times; and

IT IS FURTHER RECOMMENDED that Dr. Hutchinson's motion to dismiss for failure to state a claim (Rec. Doc. 22) should be granted, and the claim asserted against her should be dismissed without prejudice as premature.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[45]

---

[45] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

Signed at Lafayette, Louisiana, this 1st day of March 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE